*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DRSN REAL ESTATE GP LLC,

Petitioner-Appellant/Cross-Appellee,

v

CITY OF GROSSE POINTE WOODS,

Respondent-Appellee/Cross-Appellant.

FOR PUBLICATION
June 16, 2026
2:05 PM

No. 371826
Tax Tribunal
LC No. 18-000573

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

CAMERON, P.J.

In this case involving a dispute over respondent's valuation of petitioner's property in 2021, petitioner appeals the Michigan Tax Tribunal's (the tribunal) opinion and judgment assessing the true cash value of petitioner's real property. Respondent cross-appeals the same order. We affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner owns a continuing senior care retirement center (CCRC) known as the River of Grosse Pointe Woods (the property). It is undisputed that the CCRC is a "qualified residential rental project[]" under 26 USC 142(a)(7) and that petitioner partially financed the CCRC with tax-exempt bonds under 26 USC 142. In exchange for tax-exempt bond financing, the CCRC is subject to certain rental restrictions under 26 USC 142(d), including that the CCRC must set aside 20% of its residential units for low-income individuals or families. 26 USC 142(d)(1)(A). Relatedly, under a land-use restriction agreement (LURA) between Wayne County and petitioner, interest on the bonds used to finance construction of the property was to "remain excludible from gross income for federal income tax purposes," so long as the property was treated as a qualified residential rental project under 26 USC 142(d) and "continuously compli[ed]" with the statute's requirements. Under the LURA, the rental restrictions remained in place for the "Qualified Project Period," which was a 15-year time frame that began after a certain portion of units were occupied. The restrictions ran with the land and were binding on any successor-owners of the property.

Relevant to this appeal, petitioner challenged respondent's 2021 tax assessment of the property before the tribunal. Petitioner argued that the rent restrictions under 26 USC 142 and the LURA impacted the true cash value of the property for tax-assessment purposes. During litigation, respondent filed a motion in limine seeking to exclude evidence of the LURA on the basis of res judicata and collateral estoppel, arguing that the tribunal had already addressed and decided the issue in a prior case. The tribunal denied the motion. The tribunal then heard the parties' arguments and expert appraisers before it issued its written opinion and judgment. It declined to consider the rent restrictions in its valuation of the property, reasoning:

> Both appraisers acknowledged the LURA. Said differently, both appraisers considered the LURA. Respondent's appraiser is not to be mischaracterized because he deemed that such deed restrictions were not relevant to the development of a cost approach to value.

> Respondent considered the LURA but gave it no weight in the final conclusion of value. Respondent's appraiser's consideration for the LURA was contained in his workfile [sic] in the form of an excel spreadsheet. Moreover, the appraiser's testimony was consistent with his general understanding and treatment of the document. The appraiser asserted that the LURA amounts to a form of financing tied to the bond exemptions. The appraiser's review of the LURA is consistent with valuation practice. The LURA arguably is applicable and impactful to an income approach to a going concern value. Nonetheless, the LURA was bogged down by the countless income/expense entries for a going concern value. However, a cost approach specifically accounts for the physical property.

> Neither party quantified the relationship between the tax-free bonds and the LURA. While Petitioner argues that the subject's bond financing has nothing to do with the LURA, the fact remains that Petitioner benefits from tax free bonds while losing rent for a specified number of independent living units under the LURA. There is no evidence on the record showing that the lost rental income is greater than tax free bonds to the subject property. If Petitioner had redeemed the bonds, the LURA would still continue as of tax day. The Tribunal is not persuaded that the LURA impacts the going concern value or the real property value of the subject property (via the cost approach).

The tribunal ultimately determined that, for the 2021 tax year, the property had a true cash value of $29,550,000, a state-equalized value of $14,775,000, and a taxable value of $14,081,355. Petitioner appeals that valuation, and respondent cross-appeals.

## II. RES JUDICATA AND COLLATERAL ESTOPPEL

As a preliminary matter, respondent argues on cross-appeal that the tribunal erred in denying its motion in limine because petitioner's LURA claim had already been litigated in a prior case. We disagree.

-2-

## A. STANDARDS OF REVIEW

The appellate standard of review for a motion in limine is abuse of discretion. *Law Office of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 347 Mich App 533, 550; 15 NW3d 356 (2023). The tribunal's decision amounts to an abuse of discretion when its decision falls outside of the range of reasonable and principled outcomes. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). "However, to the extent the decision involves the proper application of legal principles, that aspect of the decision is reviewed de novo." *Law Office of Jeffrey Sherbow*, 347 Mich App at 550. This Court reviews de novo the application of the legal doctrines of res judicata and collateral estoppel. *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 202; 12 NW3d 20 (2023).

## B. ANALYSIS

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). It "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. Res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*. Relatedly, "[c]ollateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 715; 848 NW2d 482 (2014) (quotation marks and citation omitted).

In a December 2019 judgment arising from a different tax case, the tribunal determined the property's true cash value as of December 31, 2016. There, too, petitioner asked the tribunal to consider the LURA in the true cash value determination. The tribunal declined to consider the LURA in its calculations, because it found that there was a lack of evidence supporting which specific units were set aside for low-income individuals or families and what the base market rent for the units would have been. Petitioner appealed the tribunal's determination. *DSRN Real Estate GP, LLC v Grosse Pointe Woods*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 352153). This Court agreed with the tribunal that petitioner failed to properly demonstrate "the LURA's alleged detriment to the subject property's value." *Id*. at 8.

The parties do not dispute that the prior case involved the same parties and resulted in a valid, final judgment. The question that remains is whether the LURA's applicability was, for res judicata purposes, resolved in the prior case, or, relatedly, for collateral estoppel purposes, "actually and necessarily determined[.]" *Adair*, 470 Mich at 121; *Bryan*, 304 Mich App at 715 (quotation marks and citation omitted). Importantly, for either doctrine to apply in this case, the prior case must have actually rendered a decision on the merits of petitioner's LURA argument. But the tribunal in the prior case did not decide petitioner's LURA claim on the merits; it declined to consider it because petitioner had not submitted sufficient evidence of its impact on the property's value. *DRSN Real Estate GP, LLC*, unpub op at 7-8. Because the *merits* of petitioner's argument regarding the applicability of the LURA to the property's true cash value were not

addressed in the prior proceeding, we conclude that the tribunal correctly declined to apply either doctrine to preclude this action.

## III.  THE LURA

Next, petitioner argues that the tribunal erred when it failed to consider the rent restrictions under 26 USC 142 and the LURA in its valuation.  We agree.

## A.  STANDARD OF REVIEW

This Court's review of Tax Tribunal decisions "is limited."  *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 482; 473 NW2d 636 (1991).  If the tribunal's factual findings are supported by competent and substantial evidence, they are final.  *Id*.  Unless there is an allegation of fraud, our review is limited to determining whether the tribunal made an error of law or adopted a wrong principle.  *Id*. at 482-483.  The Tax Tribunal commits an error of law if a review of the entire record confirms that its decision is not supported by competent, material, and substantial evidence.  *Forest Hills Co-op v Ann Arbor*, 305 Mich App 572, 586; 854 NW2d 172 (2014).

## B.  ANALYSIS

Article 9, section 3 of the Michigan Constitution "mandates: (1) that the Legislature is to provide a uniform system of real property taxation, (2) that the tax must be assessed on the basis of the true cash value of the property, and (3) that the Legislature is to provide a determination of true cash value."  *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 483; 473 NW2d 636 (1991).

The Legislature complied with this constitutional mandate by enacting MCL 211.27(1), which provides in pertinent part:

> " '[C]ash value' means the *usual selling price* at the place where the property to which the term applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at auction sale. . . .  In determining the value the assessor shall also consider the advantages and disadvantages of location; quality of soil; zoning; existing use; *present economic income of structures. . . .*"  [*Meadowlanes*, 437 Mich at 483, quoting MCL 211.27(1) (first emphasis and ellipses in *Meadowlanes*, second emphasis added).]

The true cash value of a property is synonymous with its fair market value.  *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007).  Therefore, an assessment of a property's true cash value "must reflect the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation."  *Id*.

Our Supreme Court has recognized that certain intangible factors, while "not taxable in and of themselves, . . . can increase or decrease the value of a property."  *Meadowlanes*, 437 Mich

at 495. These intangible factors "should be reflected in the assessment process to the extent that they increase or decrease the value of the subject real property." *Id*. at 495-496. "Generally, courts also regard the rental restrictions under IRC § 42 as a negative factor in the valuation that goes hand in hand with the tax credits." *Huron Ridge LP*, 275 Mich App at 42 n 5.

The rental restrictions in this case are an intangible factor that would affect the property's "usual selling price" such that they should be considered in the property's true cash value assessment. *Meadowlanes*, 437 Mich at 495-496; MCL 211.27(1). They directly affect the present economic income of the property, MCL 211.27(1), and will likely affect what a buyer would be willing to pay for the property given its decreased earning capacity. Unlike the prior case, petitioner submitted evidence demonstrating the difference between the market value rents for the units at issue and the adjusted, low-income rents actually charged. Thus, the tribunal made an error of law by failing to consider the rent restrictions when assessing the property's true cash value.

The tribunal's denial of respondent's motion in limine is affirmed. The tribunal's valuation of the property is reversed, and the matter is remanded for the tribunal to consider the rental restrictions in its assessment. In doing so, the tribunal can likewise consider any offsetting tax benefits for the tax-exempt bond financing, if relevant and supported with sufficient evidence. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle